UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CONNIE MCHUGH and GILBERT FALLON,<br><br>  Plaintiffs,<br><br>  v.<br><br>VERTICAL PARTNERS WEST, LLC, d/b/a VENOM INTERNATIONAL GROUP and YUNTONG POWER CO., LTD. a/k/a ZHANGSHAN ELECTRIC WIN TECHNOLOGY CO., LTD.,<br><br>  Defendants. | Case No: 2:20-cv-00581-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court in the above-titled matter are a Motion to Dismiss (the "Motion") from Defendant Yuntong Power Co. Ltd. ("Yuntong"), pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction (Dkt. 71), and Plaintiffs' Motion to Seal (Dkt. 73).[1] Plaintiffs have responded to the Motion, and both Yuntong and Defendant Vertical Partners West, LLC ("Venom") have replied. The matter is now ripe for the Court's review.

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding

---

[1] In accordance with Fed. R. Civ. P. 5.2(d), Dist. Idaho Loc. Civ. R. 5.3, and good cause appearing, Plaintiffs' Motion to Seal is GRANTED. The documents so indicated shall remain under seal.

MEMORANDUM DECISION AND ORDER - 1

further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons stated below, the Court DENIES the Motion.

## II. BACKGROUND

Plaintiffs brought this product liability action alleging that a "Bias 5000 mAh battery pack" (the "Battery") failed and caused damage to Plaintiffs' property located at 51 Fredericks Grove Road in Lehighton, Pennsylvania. Plaintiffs assert Defendants Yuntong, a Chinese corporation, and Venom, an Idaho corporation, were in the business of manufacturing, distributing, and/or selling batteries, including the Battery.

Plaintiffs commenced this action in Pennsylvania state court. On May 14, 2018, Venom filed a Notice of Removal on the basis of diversity jurisdiction to the United States District Court for the Middle District of Pennsylvania. The case was ultimately removed to federal court on May 17, 2018. Thereafter, Venom filed an answer to the Complaint, and Plaintiffs filed an Amended Complaint adding Yuntong as a defendant and alleging negligence, breach of warranty, and strict liability. Venom filed an Answer to Plaintiffs' Amended Complaint with affirmative defenses and a crossclaim against Yuntong. The Amended Complaint was then forwarded to a process server familiar with the Hague Convention's requirements for service. Ultimately, Yuntong was served, appeared before the court, and filed a Motion to Dismiss. The court then permitted limited jurisdiction discovery. At that time, Plaintiffs took the deposition of the corporate designee of Venom, who established the business arrangement between Venom and Yuntong and stated

Yuntong "continuously and systematically sold and shipped products to [Venom] in Idaho." Dkt. 72, at 3. On September 23, 2020, Plaintiffs filed a Motion to Transfer Venue to the District of Idaho, which was granted on December 8, 2020. Yuntong soon after filed its Motion to Dismiss for lack of personal jurisdiction, which is before the Court now.

### III. STANDARD OF REVIEW

When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff "bears the burden of demonstrating that jurisdiction is appropriate." *Dole Food, Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). The plaintiff "need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). Where there is no applicable federal statute governing personal jurisdiction, the law of the state in which the district court sits applies. *Boschetto v. Hansing*, 539 F.3d 1101, 1015 (9th Cir. 2008). The Idaho Supreme Court has determined that Idaho's long-arm statute (Idaho Code § 5-514) allows a broader application of personal jurisdiction than is permitted under the Due Process Clause. *See generally Smalley v. Kaiser*, 950 P.2d 1248 (Idaho 1997). Thus, the Court need only decide whether asserting personal jurisdiction complies with due process. *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987).

### IV. DISCUSSION

Yuntong asserts this action should be dismissed based on a lack of personal jurisdiction. Dkt. 71. There are two types of personal jurisdiction—general and specific. *Lake*, 817 F.2d at 1420. Under either type, due process requires a defendant to have at least "minimum contacts" with the forum state so that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v.*

*Washington*, 326 U.S. 310, 316 (1945). "[T]he defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Walden v. Fiore*, 571 U.S. 277, 291 (2014).

Because the parties discuss both general and specific personal jurisdiction, this Court will follow suit.

### A. General Jurisdiction

General jurisdiction is exercised by a state when the defendant has contacts with the forum that are so "continuous and systematic" as to render the defendant "essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (cleaned up). "[O]nly a limited set of affiliations with a forum will render a defendant amenable to [general] jurisdiction there." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). For a corporation, "unique" and "easily ascertainable" affiliations with a forum include its principal place of business and its place of incorporation. *Id*. Outside these limited affiliations, general jurisdiction is appropriate only when the defendant's relationship with the forum is so continuous and systematic that the defendant is reasonably regarded as "at home" there. *Daimler*, 571 at 134. The party opposing a motion to dismiss under the Federal Rules of Civil Procedure bears the burden of showing jurisdiction is appropriate. *Wells Cargo, Inc. v. Transp. Ins. Co.*, 676 F. Supp. 2d 1114, 1118 (D. Idaho 2009) (citing *Boschetto*, 539 F.3d at 1011).

In the present case, it is undisputed Yuntong is incorporated in China and its

principal place of business is in China. *See* Dkt. 10, at ¶ 4. Thus, in order for this Court to exercise general jurisdiction over Yuntong, Yuntong's relationship with Idaho must be so continuous and systematic that it is essentially at home here. Plaintiffs assert that because Yuntong entered into a contract with Venom in Idaho, sold goods to Venom in Idaho, and routinely shipped goods to Venom in Idaho, Yuntong is essentially at home in Idaho. Dkt. 72, at 6–7. The Court finds these connections are not sufficiently continuous and systematic to render Yuntong at home in Idaho. Engaging with one other party in a state is a far cry from being at home there. Other than contracting with, selling to, and shipping goods to Venom in Idaho, Plaintiffs make no further argument that Yuntong is "at home" in Idaho. *See generally* Dkt. 72. Because it is Plaintiffs who must show jurisdiction is appropriate, the Court finds Plaintiffs failed to meet their burden in showing this Court has general jurisdiction over Yuntong. Accordingly, the Court finds Yuntong is not subject to general personal jurisdiction in Idaho.

### B. Specific Jurisdiction

A court has specific jurisdiction over a defendant "if the controversy is sufficiently related to or arose out of the defendants' contacts with the forum." *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995). In other words, specific jurisdiction depends on the quality and nature of the defendant's contacts with the forum state in relation to the cause of action. *See Lake*, 817 F.2d at 1421. The Ninth Circuit has established a three-part test to determine whether a court may exercise specific personal jurisdiction over a nonresident defendant:

> (1) The nonresident defendant must do some act or consummate some

> transaction with the forum or perform some act by which he *purposefully avails* himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which *arises out of or relates to* the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be *reasonable*.

*Id*. (emphasis added); *see also Ballard v. Savage*, 65 F.3d 1495 (9th Cir. 1995). The Ninth Circuit has also noted that the "contacts" requirements can be lessened if considerations of reasonableness so demand. *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986). The plaintiff has the burden of satisfying the first two prongs. *Lake*, 817 F.2d at 1421. The burden then shifts to the defendant to demonstrate unreasonableness. *Boschetto*, 539 F.3d at 1016.

(1) *Purposeful Availment*

The first prong of the three-part test "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous or attenuated contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Purposeful availment and purposeful direction, although often used interchangeably, apply to two different situations, particularly in Ninth Circuit case law. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). A purposeful availment analysis is more often used in suits involving contracts, whereas a purposeful direction analysis is used in suits involving torts. *Id*. However, the Ninth Circuit has often applied the purposeful availment test to cases involving both contract and tort claims where the tort claims arise out of the contractual relationship between the parties. *See, e.g.*, *Sher*, 911 F.2d at 1362–64 (applying the purposeful availment test to a complaint alleging both contract and tort claims); *Boschetto*,

MEMORANDUM DECISION AND ORDER - 6

539 F.3d at 1016–19 (applying the purposeful availment test to a complaint that contained both tort and contract claims); *HK China Grp. v. Beijing United Auto. & Motorcycle Mfg. Corp.*, 417 F. App'x 664, 665–66 (9th Cir. 2011) (applying the purposeful availment test to a complaint that included claims for breach of contract and fraud as "the action sounds primarily in contract").

This case includes both tort and contract claims. Venom has asserted contribution and/or indemnity crossclaims against Yuntong. *See* Dkt. 75, at 12. Because the contractual relationship between Yuntong and Venom is at the heart of the Court's personal jurisdiction analysis, the Court finds that the purposeful availment test is appropriate here. Accordingly, the Court will next evaluate whether Yuntong purposefully availed itself of Idaho and its laws.

A "showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802. However, a contract with a party in the forum state does not automatically establish the minimum contacts necessary for personal jurisdiction. *Burger King*, 471 U.S. at 479–80. The Court must also consider the parties' "prior negotiations and contemplated future consequences," the "parties' actual course of dealing," and the terms contained in the contract, including any choice-of-law provisions. *Id*. at 479, 482.

In the present case, the facts support a finding that Yuntong purposefully availed itself of the privilege of doing business in Idaho. Yuntong has routinely conducted business in Idaho by selling its products to Venom and shipping them to Venom's headquarters in

Idaho. *See* Dkt. 74, Ex. A. Yuntong entered into an exclusive supply agreement with Venom, which states that Venom is based out of Idaho and lists Venom's Idaho address numerous times throughout the agreement. *See* Dkt. 74, Ex. C. This exclusive agreement outlines that Venom "shall be the sole and exclusive purchaser [of the] Products manufactured by [Yuntong]." Dkt. 74, Ex. C at 14. Thus, it appears the arrangement between Venom and Yuntong is of great pecuniary significance for Yuntong. In short, the exclusive supply agreement demonstrates that Yuntong purposefully targeted a known Idaho entity, recognized multiple times that the entity is located in Idaho, and entered into a deal of great financial significance with the entity in Idaho.

Further, the exclusive supply agreement references Idaho law several times. In the choice-of-law provision, for example, the agreement indicates "the 1980 United Nations Convention on Contracts for the International Sale of Goods, supplemented as necessary by the internal laws of the State of Idaho" will be the governing law. Dkt. 74, at 20. Under the arbitration provision, the agreement indicates "[b]oth the subject matter of and the procedure for document discovery will be defined by Idaho law …. " *Id*. In addition, as Venom notes in its Response, Yuntong explicitly and clearly agreed to indemnify and defend Venom—an Idaho corporation—against personal property damage caused by Yuntong's products, among other things. *See* Dkt. 74, at 16. This demonstrates that Yuntong should have reasonably anticipated being haled into court in Idaho. *See World–Wide Volkswagen*, 444 U.S. at 297. The Court has no trouble concluding that Yuntong purposefully availed itself of the forum state of Idaho.

Despite these details, Yuntong argues its activities do not constitute a purposeful

availment because the "batteries purchased from Yuntong were shipped F.O.B. Zhongshan." The Idaho Commercial Code defines "F.O.B." as follows:

> (1) Unless otherwise agreed the term F.O.B. (which means "free on board") at a named place, even though used only in connection with the stated price, is a delivery term under which
> > (a) when the term is F.O.B. the place of shipment, the seller must at that place ship the goods in the manner provided in this chapter (section 28-2-504) and bear the expense and risk of putting them into the possession of the carrier[.]

I.C. § 28-2-319(1). Yuntong also cites *Farmers Insurance Exchange v. Portage La Prairie Mutual Insurance Co.* to demonstrate the Ninth Circuit has found that the ability to control the travel of a product is relevant to establishing personal jurisdiction. 907 F.2d 911, 914 (9th Cir. 1990); *see* Dkt. 71-1, at 5. Yuntong provides the following citation from *Farmers*: "unlike a product seller or distributor, an insurer has the contractual ability to control the territory into which its 'product'—the indemnification and defense of claims—will travel." *Farmers*, 907 F.2d at 914. This is significant, Yuntong reasons, because once Yuntong "provided the goods for shipping in [China], they entered [Venom's] possession and Yuntong lost all ability to direct or otherwise control the transit of the goods." Dkt. 71-1, at 5–6. However, it appears Yuntong has cited selective portions of *Farmers*, leaving out details that are relevant to the Court's specific jurisdiction analysis.

In *Farmers*, two insurance providers were obligated to provide coverage for a single-vehicle accident. One insurer, a Canada corporation, was under contractual obligation to indemnify the other insurer, but argued the U.S. district court did not have personal jurisdiction. The district court agreed, finding personal jurisdiction was improper. On appeal, the Ninth Circuit found the foreign insurer was indeed subject to the court's

MEMORANDUM DECISION AND ORDER - 9

personal jurisdiction, explaining that the foreign insurer "purposefully availed itself of the [forum] when it contracted to indemnify and defend claims arising there." *Farmers*, 907 F.2d at 914.

Yuntong's current situation is analogous to the foreign insurer in *Farmers*. Like the foreign insurer, Yuntong contracted with Venom to defend and indemnify Venom against claims arising from or in connection with Yuntong's products. If somehow Yuntong did not foresee that claims resulting in litigation would take place in Idaho, where Venom operates and distributes Yuntong's products, Yuntong certainly should have. Further, even supposing Yuntong did not foresee litigation taking place in Idaho, and supposing Yuntong is more similar to the product seller or distributor example in *Farmers*, there is no evidence to suggest that the ability to control the travel of a product is a dispositive or controlling factor in determining personal jurisdiction. On the contrary, it appears that ability is merely one factor among many to be considered in a personal jurisdiction analysis.

Indeed, the Ninth Circuit and other courts have held that the mere existence of a "free on board" designation is not enough to shield a nonresident defendant from what would otherwise be a proper exercise of jurisdiction. *See Taubler v. Giraud*, 655 F.2d 991, 994–96 (9th Cir. 1981) (finding jurisdiction in California proper notwithstanding an "FOB France" designation because the defendants had, among other things, entered into a contract to sell and ship products in California); *Pac. Pulp Molding, Inc. v. Burchfield*, No. 15-CV-1602, 2015 WL 12672701, at *6 (S.D. Cal. Sept. 28, 2015) (finding an "FOB Alabama" designation did not shield defendants from California jurisdiction because their product included a two-year warranty, indicating a continuing responsibility to the plaintiff

in California); *Excel Plas, Inc. v. Sigmax Co., Ltd.*, No. 07-CV-578-IEG (JMA), 2007 WL 2853932, at *8 n.11 (S.D. Cal. Sept. 27, 2007) (finding a defendant is not automatically shielded from specific jurisdiction because of an "FOB Japan" designation). Conversely, had Yuntong's products been shipped F.O.B. Idaho, the F.O.B. designation by itself would not enough to satisfy the purposeful availment requirement; again, an F.O.B. designation is merely one factor in a court's personal jurisdiction analysis. *See Lakeside Bridge & Steel Co. v. Mountain State Constr. Co.*, 597 F.2d 596, 604 n.14 (7th Cir. 1979) (questioning the weight to be afforded the contract created by the F.O.B. term in a personal jurisdiction analysis); *Joe Boxer Corp. v. R. Siskind & Co., Inc.*, No. C 98-4899 SI, 1999 WL 429549, at *5 (N.D. Cal. June 8, 1999).

Accordingly, after thorough evaluation of all the factors discussed above, the Court finds that Yuntong has purposefully availed itself of the privilege of doing business in Idaho.

(2) *Claim Arises Out of or is Related to Defendant's Activities in Forum*

The second requirement for specific jurisdiction outlines that the lawsuit "arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021) (cleaned up). "The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." *Id.* For the causation requirement, the Ninth Circuit implements a "but for" causation test: personal jurisdiction is proper only where "but for" the defendant's activities in the forum, the plaintiff's injuries would not have occurred. *Dole Food*, 303 F.3d at 1108 In this case, it is apparent that, but for

Yuntong's selling and shipping of products to Venom (who was Yuntong's exclusive buyer), the Battery would not have been distributed by Venom to Plaintiffs, and Plaintiffs' alleged injuries would not have occurred. Therefore, this second element of specific personal jurisdiction is met.

### (3) *Reasonableness*

The final requirement for specific personal jurisdiction demands that the exercise of jurisdiction is reasonable and comports with the notions of fair play and substantial justice. *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 233 F.3d 1082, 1088 (9th Cir. 2000). For this element, Defendant bears the burden of proof. *Id*. A court determines reasonableness by seven factors: (1) the extent of the defendant's purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Id*.

In its Reply Brief, Yuntong asserts the reasonableness factors indicate personal jurisdiction would be improper in this case. Specifically, Yuntong provides the following list:

- Yuntong has had no purposeful interjection into the forum state's affairs, having expressly limited its activity to [China];
- The burden on Yuntong defending in Idaho would be great, considering it has no physical presence or connection with this jurisdiction;
- Idaho has little interest in adjudicating this dispute—the Plaintiffs in this action are residents of Pennsylvania and Venom, although it is an Idaho corporation, has expressly contracted to resolve its disputes in international arbitration in Singapore;

MEMORANDUM DECISION AND ORDER - 12

- Judicial efficiency is promoted by enforcing an agreement to arbitrate and requiring the parties to make efficient use of the alternative dispute resolution method they have contracted for;
- This forum has no importance to the plaintiff's interest in convenient and effective relief—Plaintiffs are Pennsylvania residents who face no particular advantage in using Idaho's courts and Venom has agreed to resolve its disputes through arbitration;
- International arbitration is an effective alternative forum to resolve the claims against Yuntong.

Dkt. 77, at 7.

### i. Purposeful Interjection

In evaluating the purposeful interjection factor, "[e]ven if there is sufficient interjection into the state to satisfy the purposeful availment prong, the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the reasonableness prong." *Core–Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1487 (9th Cir. 1993) (citing *Burger King,* 471 U.S. at 476–77). Here, Yuntong's contacts with Idaho were not significant enough to warrant general jurisdiction. But, as discussed above, Yuntong has routinely conducted business in Idaho by selling and shipping its products to Venom to its headquarters in Idaho. *See* Dkt. 74, Ex. A. The exclusive supply agreement between Venom and Yuntong references Idaho law several times, including an Idaho law choice-of-law provision. *Id*. at 20. Yuntong agreed to indemnify and defend Venom against damage caused by Yuntong's products. *Id*. at 16. The Court ultimately has found that Yuntong's contacts were sufficient to meet the purposeful availment test. Because the contacts were relatively few, this factor weighs in Yuntong's favor—against the exercise of specific jurisdiction. However, this factor does not merit much weight in Yuntong's favor because its contacts were sufficient to meet the purposeful availment test.

*See Core–Vent*, 11 F.3d at 1488 (determining that attenuated contacts only provided slight weight in defendant's favor because the contacts, although less than significant, were sufficient to meet the purposeful availment test).

### ii. Defendant's Burden in Litigating

A defendant's burden in litigating in a particular forum is a factor courts consider in the assessment of reasonableness. *See Bancroft*, 233 F.3d at 1088. The Ninth Circuit has said, however, that "unless the 'inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction.'" *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998) (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128–29 (9th Cir. 1995)). Here, Yuntong contends the burden of litigating "in Idaho would be great, considering it has no physical presence or connection" with the forum. Dkt. 77, at 7. Although Yuntong may face a burden in litigating in Idaho, the Court determines that the inconvenience is not so great as to deprive Yuntong of due process. As the Ninth Circuit has said, "modern advances in communications and transportation have significantly reduced the burden of litigating in another country." *Sinatra v. Nat'l Enquirer*, 854 F.2d 1191, 1199 (9th Cir. 1988); *see also Panavision*, 141 F.3d at 1323 ("in this era of fax machines and discount air travel[,] requiring [the defendant] to litigate in [a foreign jurisdiction] is not constitutionally unreasonable" (internal quotations omitted)). Accordingly, though the burden does not violate due process and is relatively small, this factor still weighs in Yuntong's favor.

### iii. Conflict with Sovereignty of Defendant's State

"The unique burdens placed upon one who must defend oneself in a foreign legal

system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Ind. v. Superior Court*, 480 U.S. 102, 114 (1987). "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *United States v. First Nat'l City Bank*, 379 U.S. 378, 404 (1965). The Court finds that the international context of this case militates in favor of Yuntong. However, "this factor is not dispositive because, if given controlling weight, it would always prevent suit against a foreign national in a United States court." *Gates Learjet Corp. v. Jensen*, 743 F.3d 1325, 1333 (9th Cir. 1984).

### iv. Forum State's Interest

The Court next considers the state of Idaho's interest in adjudicating the suit. The Court finds this factor weighs in favor of exercising personal jurisdiction over Yuntong. First, Idaho has an interest in adjudicating this dispute because several provisions in the exclusive supply agreement indicate Idaho law will be the controlling/supplemental law used. *See* Dkt. 74, at 20. Each state has an interest in deciding the application of its own laws. *See, e.g.*, *Kumarelas v. Kumarelas*, 16 F.Supp.2d 1249, 1255 (D. Nev. 1998) ("Nevada has a vested interest in having courts located within its boundaries deciding on the application of its laws"); *Gates Learjet Corp.*, 743 F.3d at 1336 ("Arizona has a significant interest in interpreting its own laws").

Second, states have an interest in ensuring contracts negotiated between foreign entities and in-forum businesses are enforced. *See, e.g.*, *Holland Am. Line, N.C. v. Orient Denizcilik Turizm Sanayi VE Ticaret, A.S.*, No. C17-1726-JCC, 2018 WL 3742197, at *5

(W.D. Wash. Aug. 7, 2018). In this case, Yuntong contracted with Venom to defend and indemnify Venom—an Idaho company—against damage caused by Yuntong's products. Because Venom is an Idaho corporation, the state of Idaho has an interest in ensuring Venom is indemnified and defended by Yuntong to the proper extent. Accordingly, this factor weighs heavily in favor of exercising jurisdiction over Yuntong.

### v. Efficient Solution

The location where the supposed harm took place, or where most of the evidence is located, is normally the most efficient forum. *Pac. Atl. Trading Co. v. M/V Main Express*, 758 F.2d 1325, 1331 (9th Cir. 1985). This factor, however, is "no longer weighed heavily given the modern advances in communication and transportation." *See Panavision*, 141 F.3d at 1323 (citing *Caruth*, 59 F.3d at 129)). Here, it is undisputed that the damage caused by the Battery occurred on Plaintiffs' property in Pennsylvania.[2] But, Yuntong's participation in this lawsuit will result in the most expedient resolution of this case, given that the case is already presently before the Court after Venom asserted a crossclaim against Yuntong. Accordingly, this factor is neutral.

### vi. Convenient and Effectiveness of Relief

The Court agrees with Yuntong that "[t]his forum has no importance to Plaintiffs' interest in convenient and effective relief[.]" Dkt. 77, at 7. But Venom—who has filed a crossclaim against Yuntong—has an obvious interest in having its crossclaims heard in the

---

[2] Yuntong additionally argues that "[j]udicial efficiency is promoted by enforcing an agreement to arbitrate and requiring the parties to make efficient use of the alternative dispute resolution method they have contracted for[.]" Dkt. 77, at 7. If Yuntong wishes to pursue enforcement of the arbitration agreement contained in its exclusive supply agreement with Venom, the Court directs Yuntong to file a motion to compel arbitration.

same court in which it is appearing as a defendant. Therefore, this factor weighs in favor of personal jurisdiction over Yuntong.

### vii. Existence of Alternative Forum

Plaintiffs "bear[ ] the burden of proving the unavailability of an alternative forum." *Core–Vent*, 11 F.3d at 1490. Here, neither Plaintiffs nor Venom has met the burden of proving the unavailability of an alternative forum. Accordingly, this factor weighs in favor of Yuntong.

A review of the seven factors demonstrates that this is indeed a close case. On balance, however, the Court determines the exercise of personal jurisdiction over Yuntong is reasonable. The Court acknowledges that four of the seven factors weighed in favor of Yuntong. However, the Court has found that minimum contacts have been established and that factors four and six from the Court's reasonableness analysis weigh in favor exercising personal jurisdiction over Yuntong. Accordingly, because "the interests of the plaintiff (fourth factor) and the forum in the exercise of jurisdiction (sixth factor) will [often] justify even the serious burdens placed on the alien defendant," *Asahi Metal*, 480 U.S. at 107. The Court finds Yuntong has not met its burden to "present[] a *compelling case* that the exercise of jurisdiction would not comport with fair play and substantial justice." *Core–Vent*, 11 F.3d at 1490 (emphasis added).

Accordingly, the Court finds the three elements of personal jurisdiction have been met in the present case. First, Yuntong has purposefully availed itself of the forum state of Idaho. Second, the claims in this case arose from Yuntong's forum-related activities. Third, the exercise of personal jurisdiction comports with fair play and substantial justice and is

reasonable.

## V. ORDER

For the above stated reasons, the Court determines it proper to exercise personal jurisdiction over Yuntong. Accordingly, IT IS ORDERED:

1. Defendants' Motion to Dismiss (Dkt. 71) is DENIED.

2. Plaintiffs' Motion for Leave to File Under Seal (Dkt. 73) is GRANTED.

DATED: April 19, 2021

David C. Nye
Chief U.S. District Court Judge